**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IFEOMA ADA CHINWEOKE OJUKWU,<br><br>Petitioner,<br><br>v.<br><br>ROBERT LYNCH, ICE DETROIT FIELD OFFICE DIRECTOR FOR MICHIGAN AND OHIO, *et al.*,<br><br>Respondents, | ) | Case No. 4:26-cv-2483<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>James E. Grimes, Jr. |

**OPINION AND ORDER**

Petitioner Ifeoma Ada Chinweke Ojukwu, a native and citizen of Nigeria, has resided illegally in the United States since 1999. In 2013, an immigration judge issued a final order of removal but also granted withholding of removal to Nigeria because Ms. Ojukwu feared persecution there. Now, the United States seeks to remove her to a third country, Ghana.

Against this background, Ms. Ojukwu seeks a writ of mandamus against Respondents Robert Lynch, Immigrations and Customs Enforcement Field Office Director for Michigan and Ohio; David Venturella, Acting Director of Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; Todd Blanche, Attorney General of the United States; and Daren Margolen, Director of the Executive Office for Immigration Review. Through her petition, Ms. Ojukwu seeks to compel Respondents to provide further process before

her removal to Ghana. Additionally, she moves for a temporary restraining order to enjoin her removal from the United States during the pendency of this action.

For the reasons that follow, the Court **DENIES** Petitioner's motion for a temporary restraining order and **DISMISSES** her claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Ifeoma Ada Chinweke Ojukwu is a native and citizen of Nigeria who entered the United States in 1999 by arriving at the Detroit International Airport and falsely presenting herself as a United States citizen. (ECF No. 6-1, PageID #125.) On September 23, 2013, an immigration judge ordered her removed but also granted withholding of removal to Nigeria due to concerns that her life or freedom would be threatened there. (ECF No. 1-3, PageID #26.) In October 2013, Ms. Ojukwu was released within the United States subject to an order of supervision. (ECF No. 6-2, PageID #127.) As required, she reported regularly for years. (ECF No. 1, ¶ 20, PageID #5.) However, she has not reported since 2019. (ECF No. 6-2, PageID #127.) During her time in the United States, Ms. Ojukwu, who is now 54 years old, married a citizen of the United States and has children who are also citizens.of this country. (ECF No. 1, ¶ 22, PageID #6.) On September 21, 2026, the immigration authorities interviewed Ms. Ojukwu, then detained her in preparation for removal to a third country other than Nigeria. (ECF No. 6-2, PageID #128; ECF No. 1, ¶ 26, PageID #6; ECF No. 8, ¶ 49, PageID #150.)

On September 22, 2026, Ms. Ojukwu filed a petition for a writ of habeas corpus (ECF No. 1) and a motion for a temporary restraining order (ECF No. 2). The

following day, she filed a second motion for a temporary restraining order. (ECF No. 4.) The record shows that her removal from the United States to Ghana will proceed as early as September 28, 2026. (ECF No. 6-1, PageID #125.) On September 24, 2026, the Court held a hearing on these motions. (Minutes, Sept. 24, 2026.) For the reasons stated on the record, the Court denied each of the pending motions for a temporary restraining order. (*Id.*) On the facts and circumstances presented, the Court granted leave for Petitioner to amend her petition. (*Id.*)

In her amended petition, Ms. Ojukwu confirms that she faces imminent removal to Ghana and alleges that she has not been provided an effective opportunity to assert a fear of persecution claim regarding Ghana. (ECF No. 8, ¶ 1, PageID #139; ECF No. 8, ¶ 52, PageID #150–51.) Her amended petition alleges various violations of the Immigration and Nationality Act and the Administrative Procedure Act. (*Id.*, ¶¶ 56–63, PageID #151–52.) Also, she asserts a violation of due process. (*Id.*, ¶¶ 64–67, PageID #152–53.) Petitioner seeks a writ of mandamus to compel Respondents to reopen her removal proceedings, provide written notice of her third country destination, and provide "at least fifteen days . . . to allow [Petitioner] a meaningful opportunity to investigate and contest removal to the newly designated third country." (*Id.*, ¶¶ e-f (prayer for relief), PageID #154.)

Petitioner again moves for a temporary restraining order to enjoin Respondents from removing her from the United States during the pendency of this action. (ECF No. 9.) In opposing Petitioner's motion for a temporary restraining

order, Respondents challenge the Court's jurisdiction. (ECF No. 11, PageID #236–40.)

## ANALYSIS

A temporary restraining order constitutes an extraordinary and emergency measure. *Corporate Lodging Consultants, Inc. v. Szafarski*, No. 1:21-cv-1611, 2021 WL 3709914, at *5 (N.D. Ohio Aug. 20, 2021) (quotation omitted). In determining whether to grant a temporary restraining order, a court analyzes whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order intends "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Its purpose is "to preserve the existing state of things until the rights of the parties can be fairly and fully investigated." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (citation omitted). Granting a temporary restraining order "prevent[s] immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Id.* (citation omitted).

To determine whether to grant a temporary restraining order, a court considers whether: (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable harm without the relief requested; (3) granting the relief requested will cause substantial harm to others; and

(4) the public interest will be served by granting the relief requested. *See, e.g.*, *Corporate Lodging Consultants*, 2021 WL 3709914, at *5. Although no single factor is determinative, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

## I. Jurisdiction

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To establish mandamus jurisdiction, a petitioner must establish that: (1) he has a clear right to relief; (2) the defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004) (citing *Heckler v. Ringer*, 466 U.S. 602, 616–17 (1984)). The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary cases." *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380 (2004). Where the writ is sought for a violation of the Administrative Procedure Act, relief is only available "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (original emphasis).

Under the immigration laws, Congress has limited the jurisdiction of the federal district courts. *See generally* 8 U.S.C. § 1252. For example, Congress forecloses review in a district court, including pursuant to 28 U.S.C. § 2241 or § 1361, of "any individual determination . . . arising from or relating to the implementation

or operation of an order of removal." 8 U.S.C. § 1252(a)(2)(A)(i). Moreover, "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." *Id.* § 1252(f)(2). Lest there be any doubt of its intentions, Congress closes Section 1252 by providing additional limitations on judicial review relating to the execution of orders of removal:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.* § 1252(g). "Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018).

Congress has not foreclosed all judicial review. In short, and as relevant here, judicial review is available in two circumstances. First, a final order of removal is subject to judicial review by "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," *not* the district court. 8 U.S.C. § 1252(b)(2). To prevent serial litigation that might slow the removal of those in the country illegally, Congress provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien

from the United States," may only proceed from a final order of removal. *Id.* § 1252(b)(9); *Hamama*, 912 F.3d at 876 (noting that, while district courts lack jurisdiction in this area, Congress has provided "a substitute that is adequate and effective to test the legality of a person's detention").

Second, 8 U.S.C. § 1252(a)(2)(D) preserves the ability to petition for a writ of habeas corpus to raise a constitutional issue. However, a writ of habeas corpus has historically "served as a means of reviewing the legality of Executive detention." *Hamama,* 912 F.3d at 875 (citing *I.N.S. v. St. Cyr,* 533 U.S. 289, 301 (2001)). Where a petitioner seeks a stay of removal to pursue further process and adjudication within the administrative system, she seeks a relief that is not traditionally cognizable in habeas. *Hamama,* 912 F.3d at 875.

Under Section 1252, Congress has made clear that the Court does not have jurisdiction over Petitioner's claims, whether brought in habeas under 28 U.S.C. § 2241 or mandamus under 28 U.S.C. § 1361. In any event, the Convention Against Torture does not prevent third-country removals, 8 C.F.R. § 208.16(f), or otherwise afford a right to challenge removal to a third country, *see generally id.* § 208.16.

Although Petitioner asserts a violation of the Fifth Amendment's Due Process Clause, Congress has broad discretion to determine what process is due in the immigration context. *See, e.g. Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *Reno v. Flores*, 507 U.S. 292, 309 (1993). Simply put, Congress has not afforded a right to raise a claim under the Convention Against Torture for a third-country removal. As the Supreme Court has long recognized, the immigration

laws generally aim "at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the[ir] theme." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999). Any claim of injury under the Convention Against Torture must be brought through a petition filed in the court of appeals:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

8 U.S.C. § 1252(a)(4); *see also* FARRA § 2242(d).

## II. The First Circuit's Decision in *D.V.D.*

Although the Court determines that it lacks jurisdiction, it must address Petitioner's arguments based on the First Circuit's recent decision in *D.V.D. v. United States Department of Homeland Security*, ___ F.4th ___, 2026 WL 2797801 (1st Cir. Sept. 18, 2026). Petitioner relies on *D.V.D.* to argue that she has a constitutional claim in the designation of a third country for removal over which the Court has jurisdiction. Respectfully, the Court disagrees with the First Circuit.

In *D.V.D.*, as relevant here, the First Circuit affirmed the certification of a nationwide class concluding that the Administrative Procedure Act and the Foreign Affairs Reform and Restructuring Act of 1998 entitle deportable aliens to notice and a hearing before third-country removal. *Id.* at *15–19. To support this ruling, the constitutional basis for federal jurisdiction under 8 U.S.C. § 1252 rests on the slender

reed of 8 U.S.C. § 1231(b)(3)(C). Specifically, the district court there read that statute as leaving to the finder of fact the question whether an alien has demonstrated a credible fear of persecution. *D.V.D.*, 2026 WL 2797801 at *13. In its view, constitutional notice and an opportunity to be heard on *any* claim of persecution must go to an immigration judge. But that view, which seizes on one sentence in a complex statutory regime and takes it out of the broader context of the statute, fails to account for the overall structure of removal under the immigration laws, which expressly contemplate third-country removals without a second proceeding before an immigration judge.

When it comes to the jurisdiction-stripping provisions in Section 1252, the First Circuit's decision suffers from at least two fatal flaws. First, it reads the agency action at issue as somehow *not* deriving from an order of removal, such that a challenge to third-country removals falls outside the four corners of Section 1252(g). *See D.V.D.*, 2026 WL 2797801, at *7. This view ignores the fact that the law, both statutes and regulations, provides alternatives for removal when the country identified in a final order of removal is not available—without requiring an immigration judge to issue a new order of removal that becomes final. Second, the First Circuit misreads *Reno v. American-Arab Anti-Discrimination Committee*. In *D.V.D.*, the court reads that decision as limiting Section 1252(g) to three discrete actions. 2026 WL 2797801, at *7. That is not what the Supreme Court said in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. at 482. But even if it were, what matters is what jurisdiction Congress gave the courts, not what the courts

say about the reach of their own jurisdiction. And, as explained above, Section 1252 in its entirety, not just one particular sentence of it, makes quite clear the limits on at least district court review in a case such as this.

*D.V.D.* presents other serious deficiencies that lead the Court to find that it has, at best, only limited persuasive value. For example, it is doubtful that Rule 23(b)(2) permits certification of the class at issue there. In any event, if the class that the district court certified in *D.V.D.* and that the First Circuit affirmed complies with Rule 23 (a matter about which the Court harbors grave doubts), then Petitioner's remedy is to go into the District of Massachusetts and seek to enforce its order. The fact that she did not underscores the substantive and procedural deficiencies of the class certification order in *D.V.D.* and otherwise speaks volumes.

## CONCLUSION

Because the Court determines that it lacks jurisdiction over this action, it **DENIES** Petitioner's motion for a temporary restraining order (ECF No. 9) and **DISMISSES** this action.

**SO ORDERED.**

Dated: September 26, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio